[Filed January 20, 1890.]

## STATE OF OREGON, Respondent, v. FRANK JARVIS, Appellant.

CRIMINAL LAW—NAME OF CRIME—INDICTMENT.—A wrong name given to the crime in the preliminary part of an indictment is an irregularity only, and not fatal. The charging part of the indictment must be looked to, to determine the character of the offense.

INDICTMENT—MULTIFARIOUS—WHEN.—An indictment which charges more than one crime, under our Code, is bad, and if the objection be taken by demurrer at the proper time, it must prevail, but if the objection be not thus taken it is waived.

CRIMINAL LAW—TRIAL—EVIDENCE—ACCOMPLICE—CORROBORATING EVIDENCE.—In a trial for the crime of incest, the party to the crime not on trial is an accomplice, and the other party cannot be convicted on her evidence, unless she be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission.

IMPEACHING EVIDENCE—EFFECT OF.—The declarations contained in an impeaching question, when contradicted, only tend to impeach the character of the witness attacked for truth and veracity, and are not evidence of the facts recited in such declarations.

PRACTICE IN SUPREME COURT—BILL OF EXCEPTIONS.—Correct practice in preparing a case for this court suggested.

APPEAL from the circuit court for Multnomah county.

The defendant was convicted of the crime of incest under an indictment, the charging part of which is as follows: "The said Frank Jarvis, on the first day of April, A. D. 1889, in the county of Multnomah, and State of Oregon, was the father of one Josephine Ross, and so being and knowing himself to be the father of the said Josephine Ross as aforesaid, and for that reason and on account of that relationship prohibited by law to intermarry with her, the said Josephine Ross, he, the said Frank Jarvis, did then and there unlawfully, feloniously, forcibly, incestuously and violently, in and upon her, the said

Josephine Ross, his said daughter as aforesaid, make an assault then and there unlawfully, feloniously, forcibly, incestuously and violently, against the will of her, the said Josephine Ross, did ravish and carnally know her, the said Josephine Ross. The said Josephine Ross then and there was a woman of the age of twenty years." Having been sentenced to the penitentiary for the term of three years under this conviction, the defendant has appealed to this court.

*Alfred F. Sears, Jr.,* and *E. Mendenhall,* for Appellant.

*Henry E. McGinn, District Attorney,* for Respondent.

STRAHAN, J.—The name given to the crime with which the pleader sought to charge the defendant in the indictment is rape, but it seems a mistake in this particular; is an irregularity and is not fatal. The charging part of the indictment must be looked to, to determine the character of the offense. *People* v. *Cuddihi,* 54 Cal. 53.

This indictment seems to embrace the main elements mentioned in three sections of the Criminal Code. Section 1733 defines the crime of rape as follows: "If any person shall carnally know any female child under the age of fourteen years, or shall forcibly ravish any woman of the age of fourteen years or upwards, such person shall be deemed guilty of rape, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than three nor more than twenty years." Section 1734 punishes the offense with imprisonment not less than twenty years in the penitentiary, or during life, if the outraged female was the sister of the whole or half blood, or the daughter of the defendant, or of his wife. Section 1873 defines and punishes incest as follows: "If any person, being within the degree of consanguinity within which marriages are prohibited by law, shall intermarry with each other, or shall commit adultery or fornication with each other, such persons, or either of them, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than three years,

or by imprisonment in the county jail not less than three months nor more than one year, or by a fine not less than two hundred nor more than one thousand dollars."

The facts alleged in this indictment evidently constitute two separate and distinct offenses, namely, rape and incest, and this is contrary to § 1273, Hill's Code, which says that the indictment must charge but one crime, and in but one form only. This objection is ground of demurrer (Hill's Code, § 1322), and it is an objection that if not so taken is waived. Hill's Code, § 1330. No objection was taken in the court below to the indictment, on this ground, and none can be raised here. The rulings of the court, on the defendant's request to give one instruction, presents the only matter necessary for us to consider.

At the conclusion of the evidence, counsel for the defendant requested the court to charge the jury, in effect, that there was not sufficient evidence before them to authorize a conviction of the defendant, and that he must be acquitted, both on the charge of rape and incest, and that the evidence was not sufficient to sustain a conviction for either crime; but the court refused to give this charge, to which ruling the defendant excepted. Hill's Code, § 1371, provides: "A conviction cannot be had on the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission." This section of the Code and the request present two questions: First, was Josephine Ross an accomplice in the commission of the crime of which the defendant stands convicted? and second, was she corroborated? And, first, was Josephine Ross an accomplice? If the rule announced by this court in *State* v. *Roberts*, 15 Or. 187, is applied to this case, the question must be answered in the affirmative. The definitions there given apply generally to every crime, and it is not perceived on what ground the one under consideration could be excepted. The case of *State* v. *Dana*, 10 Atlantic Rep. 727, was a prosecution for

incest, committed by parties within the prohibited degrees, in which the court advised the jury very fully that they ought not to convict upon the uncorroborated evidence of an accomplice, unless the testimony of the accomplice obtain full credit with the jury and they were fully convinced of its truth, in which event they should give the same effect to his testimony as should be allowed to an unimpeached witness who is in no way implicated in the offense. In passing upon an exception to this charge, the court said: "There is no rule of the common law, nor of the statute law of this State, that a person shall not be convicted on the testimony of an accomplice unless corroborated by other evidence. In some States such rule may exist, either from a code or statute law." Because there was no such a law in that State the court refused to sustain the exception. But in this State such rule does prevail, and the court has no discretion in its application in every case where the testimony of an accomplice is relied upon.

In California, where a similar statute is in force, speaking of the anomalous fact that the common law did not require that an accomplice be corroborated to authorize a conviction, and yet the court always advised the jury to acquit if he was not corroborated, said: "The apparent anomaly is done away with by section 1111 of our Penal Code. Under it, although the jurors are the sole determinators of the facts proved by the evidence, yet if there is *no* evidence other than the testimony of the accomplice, tending to connect the defendant with the commission of the offense, the judge may direct an acquittal. This, however, simply because the statute prohibits a verdict based upon the testimony of an accomplice alone, even although the jury may believe such testimony to be entirely true, and it establishes the defendant's guilt beyond a reasonable doubt, not because the jurors are prohibited from *believing* the testimony of the accomplice in the absence of the corroboration mentioned in the statute. *State* v. *Light*, 17 Or. 358; *Blakely* v. *State*, 74 Appeal, 616; *State* v. *Zollifer*,

16 Texas App. 312; *Robinson* v. *State*, 16 Lea. 146; *People* v. *Courtney*, 28 Hun. 589; *Marlin* v. *State*, 67 Ala. 55; *Merritt* v. *State*, 12 Texas App. 203; *Craft* v. *The Commonwealth*, 80 Ky. 349; *Freeman* v. *State*, 11 Texas App. 92.   In this latter case the charge was incest.   The court held her to be an accomplice, and reversed a conviction had on her uncorroborated testimony..

At common law, and in the absence of any statute governing the subject, it was the practice of judges to tell juries that they might legally convict on the evidence of an accomplice alone if they thought they could safely rely on his testimony; but at the same time, to advise them never to act on the evidence of an accomplice unless he be confirmed as to the particular person who was charged with the offense   1 Wharton Cr. Law, § 785.   And Baron Parke said  that it had always been his practice to tell the jury not to convict the prisoner unless the evidence of the accomplice be confirmed, not only as to the circumstances of the crime. but also as to the person of the prisoner.   1 Wharton Cr. Law, § 787, and authorities there cited. Many authorities on this subject are collated in note 2 to § 381, 1 Greenleaf Ev.   Speaking of the evidence of an accomplice, it is there said:   "But the source of this evidence is so corrupt that it is always looked upon with suspicion and jealousy, and is deemed unsafe to rely upon without confirmation.   Hence the court will even consider it their duty to advise a jury to acquit where there is no evidence other than the uncorroborated testimony of an accomplice."   And this principle is sustained by numerous common law citations.   In such case the common law practically required an acquittal if the accomplice was not corroborated; our statute has made it imperative.   The guilty may sometimes escape punishment under the operation of such a statute, and the innocent might be convicted under the operation of the common law rule, if Jarvis saw proper to disregard the charge of the court.   But the statute has made corroboration of an accomplice neces-

sary, so that the court has no control over the subject except to apply the statute.

The court has no discretion, but is bound to apply the statute, indiscriminately, to all cases wherever an accomplice appears as a witness and the State's case depends solely upon his uncorroborated testimony. If we were now engaged in making the law, no doubt we would declare a different rule; but the principle is already established and fixed by the authorities, and we would only add to the uncertainty of the law by disregarding them—a thing which we have no right to do. This point plainly marks the distinction between legislative and judicial power. The binding force of the authorities on this subject is fully recognized by the able editor of the *Albany Law Journal*, who says: "It might be well to provide for the case of incest as *sui generis*, but we think accomplices, in general, should be corroborated, as provided for in this section."

The legislature might have declared an accomplice incompetent as a witness; but he may be a witness, and the legislature has not said that he shall not be believed if uncorroborated, but that a *conviction* shall not be had upon his testimony unless there is other evidence tending to prove the defendant's complicity in the offense charged: *People* v. *Clough*, 15 Pac. Rep. 5; *People* v. *Thompson*, 50 Cal. 480; *People* v. *Moore*, 45 Cal. 19. And such is the ruling of this court in *State* v. *Odell*, 8 Or. 31.

And now, as to the second question above suggested. The State introduced only two witnesses in chief, Josephine Ross and her husband. The details of Josephine's evidence are of too revolting a character to be recapitulated here; but, briefly, it was to the effect that she and the defendant had during the last five years, whenever occasion permitted, indulged in sexual intercourse with each other; but she was not corroborated in any manner. All her husband knew on the subject was what she told him. Under the authorities cited this would not be sufficient to authorize a conviction.

Something was said upon the argument as to the effect to be given to the evidence of Bessie Smith. She was called to impeach Hattie Felder. Hattie Felder claims to be the wife of the defendant, and testified very fully in his behalf, contradicting the testimony given by Josephine Ross on her cross-examination. The district attorney asked her this impeaching question: Did you not say to Mrs. Bessie Smith, at their house at Rooster Rock, in the latter part of August or September of last year, Mrs. Smith and yourself being present, words to the following effect: "I am sick at heart; I have been living and putting up with Mr. Jarvis' abuse as long as I propose to; I have been abused by him. His relations with Josephine are scandalous; he takes her and throws her on the bed, and he treats her in such a way,—I tell you, Mrs. Smith, I know enough to send Jarvis to the penitentiary. Don't ever say anything about this to anybody. I am going to live with him until I get my share of what is honestly mine, and then I propose to leave him; and you may make this public," or words to that effect?

Mrs. Bessie Smith, being called as an impeaching witness, had this language repeated to her by the district attorney, and she was asked if it was uttered by the witness in her presence on the occasion referred to, and she said, "Yes; words to that effect." It was thought, upon the argument, that this statement of Hattie Felder, sworn to by Mrs. Smith, might in some way aid the State. But this cannot be; such evidence only tends to impeach the character of the witness for truth and veracity, but is not evidence of the fact stated in such declarations. *State* v. *Fitzhugh*, 2 Or. 227.

Before concluding this opinion it is proper to add that the bill of exceptions is in a most unsatisfactory form. It is in effect a transcript of the reporter's notes, taken upon the trial. It embraces all of the evidence and the charge of the court; but the exceptions to the general charge are too uncertain to be noticed. Counsel must not expect to prepare a bill of exceptions in this way, and then ask this

court to sift out the alleged errors by separating the part of the charge excepted to from that part to which no exception is taken.   Counsel for the appellant must do that. Where for any cause counsel deem it proper that all the evidence should come before this court, I think the better practice would be to annex the same as an exhibit to the bill of exceptions, carefully marking it, so it could be readily identified, and then let the bill of exceptions contain only such exceptions as were taken upon the trial, and upon which the party relies in this court.   This would enable the appellant to present in the clearest manner the rulings which he claims were erroneous.   If instructions were asked which he contends should have been given, they should appear in the bill of exceptions, and if parts of the charge actually given are claimed to be erroneous, those parts only should be separated from the general charge, leaving such general charge as a whole to be annexed to the bill of exceptions, if in writing.

But for the error of the court in refusing to give the charge asked by the appellant, and which does clearly appear from the record, the judgment of the court below must be reversed and a new trial awarded.