Argued July 30; decided October 28, 1895.

## STATE *v.* SCOTT.

[42 Pac. 1.]

CORROBORATION OF ACCOMPLICE— CODE, § 1371.— Under section 1371, Hill's Code, which provides that "a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission," the admissions and confession of the woman with whom defendant is charged with having committed adultery are not sufficiently corroborated to sustain a conviction where the corroborating evidence goes merely to show that there was an opportunity to commit the act, but does not show an adulterous mind in either party, or any circumstance from which adultery might be inferred.

APPEAL from Lane: J. C. FULLERTON, Judge.

The defendant, Duncan Scott, an unmarried man, having been indicted, tried, and convicted of the crime of adultery, committed in Lane County with one Louisa Babb, wife of A. J. Babb, was sentenced to imprisonment in the penitentiary for the term of one year. From this judgment the defendant appeals, and assigns as error the denial by the court of his request that it instruct the jury to find a verdict of acquittal.
       REVERSED.

For appellant there was an oral argument by *Messrs. George B. and George A. Dorris.*

For the state there was an oral argument by *Mr. Cicero M. Idleman,* attorney-general.

Opinion by MR. JUSTICE MOORE.

It is disclosed by the bill of exceptions that Louisa Babb, the person with whom the adultery is claimed to have been committed, testified, as a witness for the state, over the defendant's objection, that, on July twelfth, eighteen hundred and ninety-four, concluding to abandon her husband, she engaged one Sid Horn to come to her house after her clothing, which he did on the following day; that she left her home in his company about eleven o'clock in the forenoon, and, after going a short distance met, without any previous agreement, the defendant, whom she did not like, or look upon as her friend; that, not desiring to be seen by others, she remained in the woods with the defendant until about nine o'clock that evening, during which time she had sexual intercouse with him; that while in his company they ate a lunch consisting of pickles, cheese, cold beef, and bread; that at the time last mentioned she went to Sid Horn's house, and in an hour or more thereafter the defendant called there, but soon went away; that, on the following morning at about two o'clock she left Eugene on the train for Portland to seek work and to visit the coast; that, on entering a car, she saw the defendant who told her to go into another car, which she found on entering to be the smoking car; that, on arriving at Portland, the defendant ordered a cab, and she was conveyed to a hotel, where that night she occupied the same bed and had sexual intercourse with him. The following evidence was also offered and admitted over the defendant's objection, as tending to corroborate the tes-

timony of Mrs. Babb: E. H. How testified that on July
thirteenth, eighteen hundred and ninety-four, he was
engaged in the business of keeping a restaurant at
Eugene, and at eight o'clock in the morning of that
day he put up a lunch for the defendant, consisting
of sandwiches, pickles, cheese, and cake.   Sid Horn
testified that about nine o'clock in the forenoon of the
same day the defendant came to his house, and in-
vited him to go fishing but he declined the invitation;
that he did not tell the defendant anything about his
agreement to go after Mrs. Babb's clothing, or that
she intended to leave her husband; that the defendant
went with him in the direction of Mrs. Babb's house,
but remained at the river fishing while the witness
went to the house after Mrs. Babb's clothing; that
about eleven o'clock, having obtained the clothing, he
returned in company with Mrs. Babb to the place
where he left the defendant; that Mrs. Babb, not de-
siring to go to the witness' house until evening, re-
mained with the defendant; that about four o'clock in
the afternoon of that day he and his wife, Lillian
Horn, saw the defendant and Mrs. Babb together in
the woods; and that the defendant on the morning of
July fourteenth left Eugene to go to Vancouver,
Washington, to get some horses he owned.   Lillian
Horn testified that she saw Mrs. Babb and the de-
fendant together in the woods at about four o'clock
in the afternoon of July thirteenth; and, also, that the
defendant called at her house and saw Mrs. Babb
about ten or eleven o'clock that night, but soon went
away.   T. G. Hendricks testified that on the morning
of July fourteenth, eighteen hundred and ninety-four,
he went on the train from Eugene to Portland; that,
as he entered the car at Eugene, he saw the defend-
ant seated therein, and also saw Mrs. Babb enter the

car with a valise, and heard some one, but could not say who, tell her to go into another car. A. G. Mathews testified that he saw Mrs. Babb enter the smoking car of the train at Eugene on July fourteenth, and told her she ought to go into another car.

In view of this evidence, it is contended that Louisa Babb, if her testimony is to be believed, was an accomplice; that her admissions and confession have not been corroborated upon the material issue, and that the court erred in refusing to give the instruction requested. "At common law," says STRAHAN, J., in *State* v. *Jarvis,* 18 Or. 360, (23 Pac. 251,) "and in the absence of any statute governing the subject, it was the practice of judges to tell juries that they might legally convict on the evidence of an accomplice alone, if they thought they could safely rely on his testimony; but, at the same time, to advise them never to act on the evidence of an accomplice unless he be confirmed as to the particular person who was charged with the offense: 1 Wharton on Criminal Law, § 785. And Baron Parke said that it had always been his practice to tell the jury not to convict the prisoner unless the evidence of the accomplice be confirmed, not only as to the circumstances of the crime, but also as to the person of the prisoner": 1 Wharton on Criminal Law, § 787, and authorities there cited. "It," says GRAY, C. J., in *Commonwealth* v. *Holmes,* 127 Mass. 424, (34 Am. Rep. 391,) "has always been held that a jury might, if they saw fit, convict on the uncorroborated testimony of an accomplice. Lord HALE, Lord HOLT, and Lord MANSFIELD treated the question of his credibility as one wholly for the determination of the jury, without any precise rule as to the weight to be given to his testimony." But, whatever the rule may have been at common law, the statute now provides that "A con-

viction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission": Hill's Code, § 1371. Louisa Babb's admission of her participation in the alleged commission of the crime makes her an accomplice, and hence the corroborative evidence necessary to convict the defendant must be such as tends to prove adulterous acts on his part: Hill's Code, § 680. In *Commonwealth* v. *Bosworth,* 22 Pick. 399, MORTON, J., in commenting upon evidence in corroboration of the testimony of an accomplice, says: "The mode of corroboration seems to be less certain. It is perfectly clear that it need not extend to the whole testimony; but, it being shown that the accomplice has testified truly in some particulars, the jury may infer that he has in others. But what amounts to corroboration? We think the rule is that the corroborative evidence must relate to some portion of the testimony which is material to the issue. To prove that an accomplice had told the truth in relation to irrelevant and immaterial matters, which were known to everybody, would have no tendency to confirm his testimony involving the guilt of the party on trial. If this were the case, every witness, not incompetent for the want of understanding, could always furnish the materials for corroboration of his own testimony. If he could state where he was born, where he had resided, in whose custody he had been, or in what jail or what room in the jail he had been confined, he might easily get confirmation of all these particulars. But these circumstances, having no necessary connection with the guilt of the defendant, the proof of the correctness

of the statement in relation to them would not conduce to prove that a statement of the guilt of the defendant was true."

In *State* v. *Odell,* 8 Or. 30, one William George, an accomplice, testified that he and the defendant waited outside while another person went into the building and brought out the property described in the indictment. The testimony of other witnesses tended to prove that the defendant was in the town in which the theft was committed about the time of the commission of the alleged crime, and that a sack of flour was missed from the place where the larceny was alleged to have been committed, but it was there held that such evidence did not tend to connect the defendant with the commission of the crime. In *State* v. *Townsend,* 19 Or. 213, (23 Pac. 968,) an accomplice testified that he and the defendant stole a cow, which they drove from the pasture of the owner, and, in pursuance of a previous agreement, delivered to other persons at Pendleton, at which place she was butchered. The corroborative evidence was the testimony of a witness who said that on January fourteenth, eighteen hundred and eighty-nine, at about eight o'clock in the evening, the accomplice left the house at which the witness was then staying, which was between four and five miles from Pendleton, and a short distance from the pasture from which the cow was stolen; that a little later the accomplice returned in company with the defendant, whom he introduced under an assumed name; that the defendant and accomplice together, soon thereafter left the house, and the next day he heard the cow was missing. The owner of the cow also testified that she was stolen from his pasture on the night of January fourteenth, eighteen hundred and eighty-nine. The state having rested, the counsel for

the defendant moved for a nonsuit on the ground that
there was not sufficient evidence of the defendant's
guilt to be submitted to the jury. LORD, J., comment-
ing upon the facts as elicited from the corroborative
evidence, says: "They show that the defendant was
not only in the vicinity when the crime was commit-
ted, but that he was there under a false name, and at
night, and under circumstances not likely to occur
without concert between him and his accomplice in
furtherance of some common enterprise. In such case
it can hardly be said that the facts do not tend in
some degree to connect the defendant with the com-
mission of the crime."

If there was any other evidence of the adulterous
act, or of facts from which it could be inferred, and it
was sought to prove the defendant guilty of it, the
proof of the opportunity and the corroborating evi-
dence of circumstances surrounding it might possibly,
under the rule thus announced, be held sufficient to
warrant a conviction. But in that case the crime was
susceptible of proof by the person who lost the ani-
mal, while in the case at bar the only evidence of the
commission of the crime is the testimony of the ac-
complice herself. "What appears to be required,"
says Roscoe in his work on Criminal Evidence, (Vol. 1,
*183,) "is that there shall be some fact deposed to,
independently altogether of the evidence of the accom-
plice, which, taken by itself, leads to the inference,
not only that a crime has been committed, but that
the prisoner is implicated in it." Tested by this rule,
we are unable to discover any evidence, aside from
Mrs. Babb's, which, taken by itself, leads to the infer-
ence that a crime even has been committed. There
was no agreement existing between Mrs. Babb and

the defendant to meet on that occasion, nor is there
any evidence to show a previous familiarity between
them, from which the evidence of the defendant's guilt
can be inferred.     Mere proof of an opportunity to
commit adultery is insufficient to convict a person of
that crime, unless there be proof also of an adulterous
mind on the part of both parties; and to prove this
state of mind circumstantial evidence is admissible
to show a purpose or inclination to commit the act:
Bishop on Statutory Crimes, § 679.   Mrs. Babb's desire
to avoid her husband, and to seek seclusion, may have
been to her mind a sufficient reason for not wishing
to visit Horn's house in the day time.   So, too, the de-
fendant's purpose to catch fish must be presumed to
have been an honest one.   Because he and Mrs. Babb
met on the banks of the river, in the woods even, ate
a lunch together, and were seen by others, does not
necessarily or inferentially, in the absence of evidence
of an adulterous mind, prove that they committed the
crime of adultery; nor does the corroborating evidence
even tend to show the commission of a crime, or any
circumstance from which its commission can be in-
ferred.   The evidence shows that the defendant went
to Portland on the same train with Mrs. Babb, but
that in making the journey he had, at least, another
purpose, which was to get his horses from Vancouver,
Washington, while Mrs. Babb went to obtain work, and
to visit the coast.   If there was any corroborating evi-
dence of adulterous intercourse between them at Port-
land, or if the place to which she went was a brothel,
and it was proven that the defendant met her there,
it might have been sufficient to infer the commission
of the offense at the time and place alleged in the in-
dictment (Bishop on Statutory Crimes, § 682); but the
evidence of Mrs. Babb as to their conduct in that city

is not corroborated by any circumstance except that she and the defendant were seen on the same train at Eugene. From an examination of all the testimony in support of Mrs. Babb's statements we conclude that it does not corroborate the material issue, or present facts from which the commission of the crime can reasonably be inferred, and hence, under the statute, was insufficient to support the conviction, and the court erred in refusing to give the instruction requested, for which reason the judgment is reversed and a new trial ordered.　　　　REVERSED.

Decided March 23, 1896; rehearing denied.