Argued March 12, decided March 19, 1912.

## STATE v. CASE.

[122 Pac. 304.]

CRIMINAL LAW—EVIDENCE—TESTIMONY OF CODEFENDANT.

1. A codefendant cannot be used as a witness for or against the accused on separate trial until the issue as such defendant is determined or avoided by dismissal as to the proposed witness.

ADULTERY—PERSONS LIABLE—ACCOMPLICE—SINGLE WOMAN.

2. Under Sections 1458, 2370, L. O. L., providing that accessories in the commission of felonies shall be indicted, tried, and punished as principals, a single women may be indicted as a principal for participation in the act of adultery with a married man.

CRIMINAL LAW—ACCOMPLICE.

3. One may be an accomplice in a criminal act which he or she cannot commit alone.

ADULTERY—ACCOMPLICE.

4. In order for a women to be an accomplice in adultery, it is not essential that she be absent and not directly participating in the criminal act.

CRIMINAL LAW—ACCOMPLICE.

5. There is no distinction between an accomplice as a witness and the same individual as a defendant.

CRIMINAL LAW—EVIDENCE—CODEFENDANT—DISCHARGE TO BE A WIT-
    NESS.

6. Under Section 1531, L. O. L., providing that a codefendant can
be discharged to be used as a witness only where the court believes
there is not sufficient evidence to put the proposed witness on defense
the court was not required to discharge an unmarried female to be
used as a witness, where she was jointly indicted with the defendant
for adultery, and so far as the record disclosed, might have been
active in making opportunities for the adulterous acts.

From Multnomah: ROBERT G. MORROW, Judge.

The defendant, Frank L. Case, was indicted, tried and
convicted of the crime of adultery, and he appeals.

                                   AFFIRMED.

For appellant there was a brief over the names of
*Messrs. Haas & Mackay,* with an oral argument by *Mr.
L. C. Mackay.*

For the State there was a brief over the names of
*Mr. Andrew M. Crawford,* Attorney General, *Mr. George
J. Cameron,* District Attorney, and *Mr. Joseph H. Page,*
Deputy District Attorney, with an oral argument by
*Mr. Page.*

MR. JUSTICE BURNETT delivered the opinion of the court.

According to the bill of exceptions, it is charged in the
indictment that:

"The said Frank L. Case, and Jane Hensley on the
24th day of June, 1911, in Multnomah County, State of
Oregon, then and there being, did then and there unlaw-
fully and feloniously have illicit sexual intercourse with
each other; he, the said Frank L. Case, then and there
being a married man, then and there having a law-
ful wife living, to wit, Lydia Case, and thus in the
manner and form aforesaid the said Frank L. Case and
Jane Hensley did then and there unlawfully and felo-
niously commit the crime of adultery."

The defendant was tried separately at his request, and
at the hearing he called as a witness on his behalf Jane
Hensley, his codefendant. The prosecution objected to
her testifying for the reason that, being jointly indicted

with the defendant then on trial, she was incompetent to testify for the defendant until the charge against her, set forth in the indictment, had been disposed of. The bill of exceptions recites as the contention of the defense that if, as admitted by the State, Jane Hensley was a single women at the time the crime set forth in the indictment was alleged to have been committed, she could not under the laws of the State of Oregon be charged with the crime of adultery, and was therefore a competent witness. The court sustained the objection of the prosecution, and the defendant excepted. He then moved the court to dismiss the charge in the indictment as against Hensley on the ground that "the indictment did not state that the said Jane Hensley was married at the time the crime set forth in the indictment was alleged to have been committed; that she was in fact not a married woman; that, under the laws of the State of Oregon, sexual intercourse between a married man and a single woman does not make the single woman guilty of the crime of adultery; that said Jane Hensley was therefore a competent witness for the defendant at the bar; and that she was ready, willing, and able to give what was in the opinion of the court competent, relevant, and material evidence in behalf of the defendant, Case." But the motion was denied.

1. It is practically conceded that a codefendant cannot be used as a witness for or against the defendant on separate trial until the issue is determined or avoided by dismissal as to the proposed witness. Whether the legislature, having abolished the rule forbidding the defendant on trial to testify in his own behalf, should adopt the same reasons supporting that legislation and enact a law to admit the testimony of one jointly indicted, is not incumbent upon us to discuss or advise. We can only adhere to the precedents already established in *Latshaw* v. *Territory,* 1 Or. 144, and *State* v. *White,* 48 Or. 428 (87 Pac. 137).

On the principal question the defendant contends that, it having been admitted that the woman named as codefendant was unmarried at the time named in the indictment, it is impossible as a matter of law for her to have committed adultery, and hence she was not really a codefendant and was improperly included in the criminal charge.

"When two or more persons are charged in the same indictment, and the court is of the opinion that, in regard to a particular defendant, there is not sufficient evidence to put him on his defense, it must, if requested by another defendant then on trial, order him to be discharged from the indictment, before the evidence is closed, that he may be a witness for his codefendant Section 1531, L. O. L. In respect to adultery our Code provides thus: "If any person shall commit the crime of adultery, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary, etc." Section 2071, L. O. L. "A prosecution for the crime of adultery shall not be commenced except upon the complaint of the husband or wife, or if the crime be committed with an unmarried female under the age of twenty years, upon the complaint of the wife or of a parent or guardian of such unmarried female, and within one year from the time of committing the crime or the time when the same shall come to the knowledge of such husband or wife or parent or guardian. When the crime of adultery is committed between a married woman and an unmarried man, the man shall be deemed guilty of adultery also and punished accordingly." Section 2072, L. O. L. "Adultery, being punishable by imprisonment in the penitentiary, is a felony." Section 3171.

Thus it is seen that the Code itself contemplates that adultery is predicated on illicit sexual intercourse between a married man and a single woman. *Bashford* v. *Wells,* 78 Kan. 295 (96 Pac. 663: 18 L. R. A. [N. S.] 580: 16 Ann. Cas. 310); *Lyman* v. *People,* 198 Ill. 544 (64 N. E. 974); *State* v. *Fellows,* 50 Wis. 65 (6 N. W. 239); *Commonwealth* v. *Call,* 21 Pick. (Mass.) 509 (32 Am. Dec. 284). The argument of the State is that

although it is as impossible for a single woman to act as principal, in the common-law sense, in the commission of adultery as it would be for her and a married woman, they two only being involved, to commit the crime, yet under our statute on the subject of accomplices, she can be indicted as a principal for her participation in the criminal act of her paramour.

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated and all persons concerned in the commission of a felony, whether they directly commit the act constituting the crime, or aid and abet in its commission, though not present, must hereafter be indicted, tried and punished as principals as in the case of a misdemeanor." Section 1458, L. O. L.

This language is substantially repeated in Section 2370, L. O. L.

2. Can a person be an accomplice in a criminal act which that person cannot commit alone? In *State* v. *Scott,* 28 Or. 331 (42 Pac. 1), it was held that a married woman, the paramour of an unmarried defendant who was convicted of adultery, was an accomplice so as to prevent her testimony from being sufficient for the conviction of the defendant without corroboration. In *State* v. *Jarvis,* 18 Or. 360 (23 Pac. 251), the court held that the female in a case of incest was an accomplice, and hence would not be sufficient as a witness to convict the defendant unless corroborated by other evidence. The court adhered to the same doctrine in the subsequent case against *Jarvis,* 20 Or. 437 (26 Pac. 302: 23 Am. Rep. 141). The same doctrine is taught in the incest case of *Freeman* v. *State,* 11 Tex. App. 92 (40 Am. Rep. 787). In *State* v. *Light,* 17 Or. 358 (21 Pac. 132), this court held that the dealer of a game of stud poker, which cannot be played by any one alone, is an accomplice of a defendant who played the game.

In *State* v. *Geddes*, 22 Mont. 68, 87 (55 Pac. 919, 926), the Supreme Court of Montana, discussing statutes like our own on the subject of accomplices, said: "If one (a woman) could not be a principal in the crime of rape, she could not be a principal if she advised and encouraged rape. But the law declares she shall be a principal, and why may not the law make a woman who aids and abets rape guilty of rape, as well as the principal actor? The legislature had power to abrogate certain criminal distinctions, and establish others; and, though from certain aspects an absurdity may appear from others a perfectly plain specific charge is made, to which defendant must plead." *State* v. *Dowell*, 106 N. C. 722, (11 S. E. 525: 8 L. R. A. 297: 19 Am. St. Rep. 568), is a case where a husband with a loaded gun compelled his wife to submit to the sexual embraces of a negro, whom he also compelled by the same method to attempt rape upon his wife. The husband was convicted as a principal. In *Peoqle* v. *Chapman*, 62 Mich. 280 (28 N. W. 896: 4 Am. Rep. 857) a husband wished to manufacture evidence of adultery against his wife in order to divorce her. To that end he hired another man for a price to gain admission to the wife's bed and there have adulterous intercourse with her, while the husband and his brother watched from concealment. The criminal employee attempted the adultery, but meeting with resistance accomplished his purpose by force, all of which the husband stood by and watched from his hiding place. The court held that the husband was guilty of rape as a principal. In *Bishop* v. *State*, 118 Ga. 799 (45 S. E. 614), certain bank officers had embezzled the funds of the bank with which they had been intrusted. The defendant, although unconnected in any way with the bank, aided the officers in the commission of the crime. In an opinion by Justice LAMAR, now of the Supreme Court of the United

States, it was held "that, while certain crimes may only be committed by a particular class of a community, others not of the class may be principals in the second degree or accessories thereto, since one can assist in a crime which he cannot commit." In *State* v. *Jones,* 83 N. C. 605 (35 Am. Rep. 586), it is held that "a female who aids and abets a male assailant in an attempt to commit a rape becomes thereby a principal in the offense." A similar case is *State* v. *Burns,* 82 Conn. 213 (72 Atl. 1083: 16 Ann. Cas. 465). In *Boggus* v. *State,* 34 Ga. 275, the defendant aided another man to commit bigamy, and although the former did not participate in the marriage ceremony between his codefendant and the innocent woman, yet he himself was held a principal In *People* v. *McKane,* 143 N. Y. 455 (38 N. E. 950), the defendant, although a nonofficial person, induced certain election officers to violate a duty enjoined upon them by law, and he was punished as a principal.

3, 4. The arguments of defendant's counsel that only those who aid and abet in the commission of the crime, though not present, are to be treated as accomplices, and that the woman cannot be an accessory before or after the fact unless she could herself commit the crime acting alone, is completely refuted both by the terms of the statute and the great weight of precedent. The theory ill accords with the modern standard of morals, more refined than that of the common law, which concerned itself only with legitimacy of issue and primogentiure as a feature of the feudal system. Without the co-operation of some woman, the man could not commit the offense. When she lends her person to his lascivious lust, she is, in the words of the statute, "a person concerned in the commission of a felony."

It is argued that because Section 2072, L O. L., expressly denounces an unmarried man as an adulterer

when engaged in illicit relations with the spouse of another, an unmarried woman is excused on the principle that the mention of one is the exclusion of the other; or at least that because a single female is not included within the ban of the law by affirmative words, she is not liable to prosecution. At best this is a strained and technical construction dependent upon the particular section only, without reference to other parts of the statute. It leaves out of view Sections 1458 and 2370, already quoted, defining accessories and making them principals. These sections, together with Section 2071, are parts of one act, it being "An act to provide a code of criminal procedure and to define crimes and their punishment," approved October 19, 1864 (Deady's Gen. Laws 1845-1846, p. 441), and must be construed to harmonize so that if a single woman is concerned in the commission of an adultery she makes herself liable as a principal. If the woman is an accomplice for the purpose of testimony as held directly in the adultery case of *State* v. *Scott,* 28 Or. 331 (42 Pac. 1), and in the incest case of *State* v. *Jarvis,* 18 Or. 360 (23 Pac. 251), there is no sound reason why she should not incur the other liabilities of the same statute. True it is that the woman in the Scott case was married, but it was decided that she was an accomplice to the man's adultery, and the fact of her own wedded state did not affect the question. The reason is the same whether the female be married or single.

5. The statute makes no distinction between an accomplice as a witness and the same individual as a defendant, and we cannot invent a difference in that respect. Indeed, Sections 1458 and 2370 in mandatory terms say that "all persons concerned in the commission of a felony * * must hereafter be indicted, tried and punished as principal."

Apparently the case of *Ex parte Sullivan* (Cal. App.)

119 Pac. 526, and *Ex parte Cooper* (Cal.) 121 Pac. 318, are not in harmony with this view; but they both depend upon a statute of California providing that "if two persons, each being married to another, live together in a state of cohabitation and adultery, each is guilty of felony." The Code of that state also defines adultery as "the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife." In one section it is required that each participant must be married to another, and in the other only the married one is denominated an offender, thus establishing statutory conditions materially different from our own. In the absence of an act expressly defining adultery, we think it sounder reason and more in accord with good morals to adopt the language of Wharton, in Section 1721 of the tenth edition of his Criminal Law:

"Where there is a positive local statute defining adultery, of course such statutory definition must be accepted. But when 'adultery' simply is made indictable, then it must be remembered that, as just stated, the term is to be taken in the sense accepted at the time of the settlement of America, and for many centuries internationally received, namely, sexual connection by a man and a woman, one of whom is lawfully married to a third person. And this definition alone meets the full evil, which is the contempt cast on the married state, and the misery and demoralization produced in families by marital disloyalty of either father or mother. Nor is it easy to see how this definition can be escaped except by legislative exclusion, either express or implied. If an adulteress be a principal in her own adultery, her paramour is a principal in the second degree. Of course, when as in Pennsylvania, the offense is limited by statute to married persons, this reasoning fails. It also fails in jurisdiction in which sexual intercourse by an unmarried person is made by statute fornication; since in such case the common-law offense is absorbed in the statutory offense. In other jurisdic-

tions, both parties to an adulterous connection may be indictable as principals."

Bishop lays down the rule thus:

"If there is a state in which adultery is made a statutory felony, and at the same time no punishment is provided for fornication, the unwritten law, by the rules and reasons whereof all statutes are to be construed, will require the unmarried party in the unlawful act, where only one is married, to be punished for participating with the other as principal in the second degree; unless the statute is in terms to exclude this consequence. * * But, in most of the states wherein adultery is punishable, fornication is also, yet less heavily. The statutory terms, therefore, will take the place of the common-law construction; and, the unmarried party being punishable for fornication, he will not be also for participating with the other in adultery." Section 659, Stat. Crimes (2 ed.).

This reasoning is quite apropos to the situation in Oregon, for our statute has not provided any penalty for fornication which may be committed by a single act of sexual incontinence between a man and woman not wedded to each other. Aside from adultery, the penalty of the statute is visited for such conduct only upon that which is so notorious and shameless as to become lewd and lascivious within the meaning of Section 2075 L. O . L.

Relying upon the sections of Wharton and Bishop, above noted, as authority in connection with the California statutes already mentioned, the Supreme Court of that state, in the *per curiam* opinion of *Ex parte* Copper, holds that the mere sexual act alone of the unmarried female does not make her punishable as an aider or abettor. We think however, that the deduction is a *non sequitur* so far as it depends on the citations from the learned authors, Bishop and Wharton, and otherwise the argument of the opinion is not persuasive in the light of our statute and the reasoning of *State* v.

*Jarvis,* 18 Or. 360 (23 Pac. 251), and *State* v. *Scott,* 28 Or. 331 (42 Pac. 1). In fact, the court there substantially bases its conclusion on the words of the California statutes which it very properly construes to affirmatively exclude the unmarried participant.

The Cooper case may be further distinguished. The court there limits ·its doctrine thus: "Of course, an unmarried person might be guilty as a principal of this offense under Section 31 of the Penal Code by aiding and assisting in its commission some other way than by living in a state of illicit intercourse with a married person."

6. Reverting now to the language of Section 1531, L. O. L., we find that the codefendant can be discharged and used as a witness against the prosecution only when the court is of the opinion that there is not sufficient evidence to put the proposed witness on defense. Except for the admission that the female was single, the record in the case at bar is silent about the testimony already before the circuit court when the motion to discharge her was interposed. For anything that appears, she may have done more to aid her paramour in the commission of the crime charged than merely to wallow in the lecherous embraces of another woman's husband. She may have gone out of her way to make opportunities for him or taken measures on her own account to disarm possible suspicion on the part of the wife, and the like. Even giving *Ex parte* Cooper full value as a precedent, we cannot, under the language quoted from the opinion, presume that the circuit court had no just reason for denying the motion when the record is silent about the testimony.

The judgment is affirmed.     AFFIRMED.