Argued May 3, reversed and remanded May 29, 1963

# ADKINS *v.* CAMPBELL

382 P. 2d 96

*Sydney L. Chandler,* Coos Bay, argued the cause for appellant. With him on the briefs was William E. Walsh, Coos Bay.

*Harry A. Slack, Jr.,* Coquille, argued the cause for respondent. With him on the brief were Slack & Slack, Coquille.

Before McAllister, Chief Justice, and Rossman, Sloan, O'Connell and Goodwin, Justices.

## SLOAN, J.

Plaintiff alleged in one count of his complaint that defendant had alienated the affections of plaintiff's wife. A second count alleged that defendant had had criminal conversation with her. The jury found for defendant on the first count and for plaintiff on the second. Both compensatory and punitive damages were allowed in substantial amount. Defendant appeals from the judgment entered on the verdict.

Two assignments of error are brought here. The first is directed at the trial court's refusal to grant a motion for nonsuit. The second complains of evidence admitted over defendant's objections.

Plaintiff and his wife, Dena Adkins, whose affections and discrimination were in issue, were married in 1952. They became the parents of two children. For several years prior to the alleged events the family lived in a trailer house on a ranch near Brookings in Curry county. The ranch was owned by a Mr. Morris. Plaintiff was permitted to keep his trailer there in return for certain services he rendered the owner of the property. Plaintiff's wife helped about this ranch and also helped the owner of an immediately adjacent ranch property. In 1959 defendant bought the latter property and made it his place of residence. He was then separated from his wife. It was alleged that not long after defendant became a neighbor of plaintiff and his wife that the adulterous conduct between defendant and the wife began. Plaintiff's work, during that time, required him to be gone from home for about 12 hours a day.

This case was unique in respect to all similar cases we have found, save one to be mentioned later. In the instant case Dena Adkins testified at length. She swore that she had engaged in adulterous conduct with defendant on numerous occasions between 1959 and 1961. In September of 1961 defendant moved a housekeeper into his house. This angered plaintiff's wife and caused her to tell plaintiff of her alleged relations with defendant. Plaintiff sought and obtained a divorce from Dena Adkins. This action followed. Dena lived in Idaho at the time of the trial of this case but voluntarily appeared at the trial and gave the testimony mentioned.

■ Defendant's motion for nonsuit was based on the premise that the uncorroborated testimony of the wife was not sufficient to send the case to the jury. Casting aside the question of the sufficiency of the corroborating evidence, we turn to the issue defendant has here urged. He asks the court to rule as a matter of policy that the uncorroborated testimony of the adulterous spouse is not sufficient to sustain a case of criminal conversation or for alienation of affection. Defendant urges, in part, that such actions are now frowned upon by many legal authorities and have been abolished in some states.

We have reached the conclusion that this court does not possess the power to adopt the rule suggested. Our statute, ORS 41.260, we think precludes us from creating such a policy. The familiar statute reads:

> "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact except usage, perjury and treason."

In *State v. Friddles,* 1912, 62 Or 209, 123 P 904, and in *State v. Edison,* 1951, 191 Or 588, 232 P2d 73,

this statute was applied to prosecutions for rape. In each case the court held that the testimony of the prosecutrix was sufficient to send the case to the jury. *State v. Howard,* 1921, 102 Or 431, 455, 203 P 311, 318, was a murder case. In the trial of the *Howard* case the court gave an instruction in the language of the quoted statute. This court held the instruction being a copy of the statute "\* \* \* was entirely proper."

Cases charging criminal adultery like *State v. Scott,* 1895, 28 Or 331, 42 P 1, are not in point. In *Scott* the married woman who engaged in the alleged act of adultery testified that the illicit acts had occurred. This court held that her testimony required corroboration because she was an accomplice to the crime.

We conclude that the first assignment cannot be sustained.

■ The second assignment concerns testimony given by plaintiff. He was permitted to testify as to statements made to him by his then wife, away from the presence of defendant, which described specific acts of adultery. The manner in which this testimony was finally admitted is important to our decision. Prior to the admission of the testimony complained about, plaintiff's counsel twice attempted to elicit the same evidence from plaintiff. In each instance the court sustained objections to the questions. During the course of the attempt to present the evidence and the court's rulings there was considerable discussion of the admissibility of the evidence between court and counsel in the presence of the jury. Finally the following occurred:

"Q So, you have discussed this, your wife's conduct with Mr. Campbell, isn't that right?

"A Yes.

"Q Did she tell you of any specific instances wherein she and Mr. Campbell had engaged—

> "Mr. Walsh: (interposing) Just a moment, I object to that.

> "The Court: The objection is overruled, Mr. Walsh.

"Mr. Slack: Thank you, Your Honor.
"By Mr. Slack: (continuing)

"Q Would you tell us about what she told you, then?

"A Yes, she told me of three occasions, that there was two attempts to begin with, and that he had finally—he had finally got the thing done.

> Two attempts, once was in the shop and once was in the barn, and once was in Wally's deceased wife's bedroom.

"Q Did she tell you of any other places where this occurred?

"A Not at that time.

> "Mr. Walsh: (interposing) I move that the entire statement of the witness be stricken, Your Honor.

"The Court: Overruled.
"By Mr. Slack: (continuing)

"Q Now, did she tell you about any other places where this type of intimate conduct occurred with Mr. Campbell?

> "Mr. Walsh: (interposing) Same objection.

"A Yes, she did."

In *Pugsley v. Smyth,* 1921, 98 Or 448, 463, 194 P 686, 691, Justice HARRIS in his usual lucid style, examined the rules governing the admissibility of evidence of this kind. He said:

"* * * If the utterance is nothing but a recital or narrative of what has been done or said, and is

not the spontaneous and natural manifestation of the then existing emotion which inspired and produced it, then it does not come within the reason of the rule and is not admissible. It may be that in a given conversation between the husband and his deserting wife she may make many declarations; and while some of these declarations may be natural expressions of emotions, yet the others may be pure narratives of acts done and words spoken, and hence not admissible."

The opinion by Justice Lusk, in *McKinnon v. Chenoweth,* 1945, 176 Or 74, 155 P2d 944, delineates specific testimony that was offered in evidence. The precise rulings on the evidence in *McKinnon* are too long to quote here. Sufficient to say the decisions would deny the admissions of the testimony quoted.

We mentioned a similar case. It is a criminal conversation case of *Klinginsmith v. Allen,* 1952, 155 Neb 674, 53 NW2d 77. In that case, too, the offending wife had testified as to her acts of adultery with defendant. Plaintiff, as a witness, was asked to relate admissions made to him by his wife in which she had told him of specific acts. The offer was refused and the Nebraska court held that the statements were clearly inadmissible.

From these and other cases we conclude that the evidence should not have been received. The more difficult decision is to determine how prejudicial it may have been. We have concluded that it requires a new trial.

We have mentioned that the testimony was received after previous efforts to present similar testimony and following discussions with court and counsel. The latter were, in part, in the absence of the jury. However, the attempts to admit the testimony, the

court's ruling and the necessity of excusing the jury for argument, impress us that so much emphasis was put upon this testimony as to indicate to the jury that it was crucial to the proof of the case. We are reluctant to grant a new trial in this case. But we are convinced that the record indicates a strong probability of prejudice. For that reason the judgment must be reversed and a new trial ordered.