Argued October 17, decided November 12, 1912.

### STATE *v.* WONG SI SAM.

(127 Pac. 683.)

**Criminal Law—Trial—Jury—Questions of Law.**

1. Under Section 16, Article I, of the Constitution, providing that in criminal cases the jury may determine the law and the facts, "under the direction of the court as to the law," the jury must accept and apply the law as given them by the court; the ability of the jury to disobey directions implying neither a legal or moral right to do so.

**Criminal Law—Instructions—Accomplice's Testimony.**

2. An instruction as to accomplice's testimony gave to the jury, Section 1540, L. O. L., providing that a conviction could not be had on the evidence of an accomplice, unless corroborated by other evidence tending to connect accused with the commis-

sion of the crime, and told them that if the alleged accomplice was such, and was sufficiently corroborated upon important facts and as to important personages to warrant them in believing her where she was uncorroborated, they were justified in believing her as to other facts and "other persons" where there was no corroboration. Held, that the instruction did not sufficiently require that the witness be corroborated by evidence tending to connect accused with the commission of the crime.

**Criminal Law—Trial—Instructions—Accomplice's Testimony.**

3. In a homicide case, an instruction that whether a witness was an accomplice need not be proven beyond a reasonable doubt, but that a preponderance of evidence was sufficient, and that, if the jury had a doubt whether she was an accomplice, they should not apply the rule as to accomplice's testimony, but, if they found by a preponderance of the evidence that she was an accomplice, then they should apply the rule, did not direct that the witness must be found to be an accomplice beyond a doubt, before they could require corroboration in order to convict, the meaning being only that, if the jury found that the witness was an accomplice, they must apply the rule, but if they found that she was not an accomplice, or were unable to decide, they should not apply the rule; the correct rule being that, before corroboration can become a condition of conviction, the jury must be reasonably satisfied that the witness was an accomplice.

From Multnomah:   Henry E. McGinn, Judge.

Statement by Mr. Justice Bean.

The defendant, Wong Si Sam, and one Low Soon, were indicted for the crime of murder in the first degree, charged with the killing of one Seid Wah Bing on the 20th day of December, 1911, by striking him on the head with a hammer, and cutting his throat with a cleaver and razor. Wong Si Sam was tried separately and convicted of murder in the second degree. From a judgment and sentence of life imprisonment, he appeals.

The evidence produced at the trial tended to show the following facts: Seid Wah Bing, a young Chinese cannery man who worked during the fishing season at different canneries on the Columbia River and along the coast, returning to spend the winter months in Port-

land, was murdered in the rooms of Oi Sen, a Chinese woman, on the second floor of a building occupied by Chinese, in the City of Portland. For several months Seid Wah Bing and Oi Sen had been living together, though they were not married. The woman Oi Sen, and the defendants, Wong Si Sam and Low Soon, were all members of the Hop Sing Tong, a Chinese highbinders' society, of which Low Soon was president. Seid Wah Bing, who was not a member of this society, had incurred the enmity of these men to such an extent that they had threatened to take his life. Wong Si Sam, who was employed at times as second cook on board steamships plying between Portland and The Dalles, was also very friendly with the Chinese woman, and had a key to her rooms, where he resorted when he pleased. On the evening of December 19, 1911, Seid Wah Bing and Oi Sen attended a supper party given in the rooms of some Chinese cannery men two doors east of Oi Sen's rooms, in the same building, where Seid Wah Bing remained until after midnight of the 19th. As Oi Sen testified, on that evening Wong Si Sam and Low Soon came to her rooms and held some conversation. They told her that they were going to kill Seid Wah Bing. About 10 o'clock she left for the party, remaining there until after midnight, when, accompanied by Seid Wah Bing, she left for her rooms, telling him of the proposed threat. When they opened the door of her room, they were confronted by the defendants Wong Si Sam and Low Soon, who immediately began to quarrel with Seid Wah Bing, offering to fight him and threatening to do him violence. After the quarrel had continued for about an hour they began to fight. Low Soon struck Seid Wah Bing with a small hatchet, knocking him down upon the bed, whereupon Wong Si Sam picked up a large meat cleaver, and cut the victim's throat, slashing his face to the bone with a razor which he drew from his pocket, and killing him.

According to the story of Oi Sen, she stood by, offering no resistance, and called for no help. The two men admonished her to make no outcry, and not to reveal their crime, under a threat of similar punishment. They then sent her across the street to the rooms of Wong Si Sam, where she remained during the rest of the night. Wong Si Sam and Low Soon then dismembered the body of their victim, cutting it into four pieces, and placing it in a trunk found in the woman's rooms, covering the remains with a layer of salt. The next day they directed Oi Sen to get an expressman to remove the trunk, and gave her money for a ticket to have the trunk and contents shipped to Seattle, Washington, which she did. The woman remained in concealment with the defendant Wong Si Sam, her own rooms being abandoned and locked up, until three or four days later, when the defendant took her to The Dalles on the steamer Bailey Gatzert, upon which he was working. She remained there a short time, and was then sent by Wong Si Sam to Billings, Montana, where she was subsequently found by the police and brought back to Portland. The police had in the meantime discovered the body in the trunk at Seattle, where the remains were identified as those of Seid Wah Bing. Oi Sen described the hammer with which Low Soon struck Seid Wah Bing, and the razor and cleaver with which Wong Si Sam slashed the face and throat of decedent. Thereafter the police searched the rooms of Wong Si Sam where they found all the furniture that had formerly been in the woman's rooms concealed and stored away. They also found the hammer hidden in the bed of Wong Si Sam, and the razor which the woman identified as being the one used by him at the murder. When found, the entire edge of the razor was roughened and nicked as though it had been drawn across some hard substance. It was admitted by defendant Wong Si Sam that this was his razor. Oi

Sen told the entire story to the officials, and as a witness for the State gave evidence in detail of the above facts. Oi Sen testified that, when she got down to the depot to ship the trunk, both Wong Si Sam and Low Soon were there. No other witness testified to this, or to having seen either Wong Si Sam or Low Soon in any part of the building where the crime was committed, at the time mentioned in the testimony of Oi Sen. It was proven by evidence other than that of Oi Sen, and admitted by defendant, that the woman did go to The Dalles on the Bailey Gatzert December 25th, and that she spent most of her time in the room occupied by Wong Si Sam and the head cook as a sleeping apartment. It was in evidence that, when defendant was first arrested and brought into the presence of Oi Sen, he denied any knowledge of the woman, or acquaintance with her.                                    REVERSED.

For appellant there was a brief and an oral argument by *Mr. Charles W. Fulton.*

For the State there was a brief over the names of *Mr. George J. Cameron,* District Attorney, *Mr. John J. Fitzgerald,* and *Mr. John F. Logan,* with oral arguments by *Mr. Fitzgerald* and *Mr. Logan.*

MR. JUSTICE BEAN delivered the opinion of the court.

Defendant's counsel first assigns as error the court's instruction to the jury over his objection and exception, as follows:

"Section 16 of Article I of the Constitution of Oregon provides that in all criminal cases the jury shall have the right to determine the law and the facts, under the direction of the court as to the law. * * The Supreme Court, however, has decided that in criminal cases the jury are to have the legal and constitutional right to pass upon the law as well as upon the facts. They are under moral obligation, however, to accept the law as the court gives it to them, and that moral obligation

requires that they should accept it as it is delivered to them by the court unless they can feel upon their consciences they know the law better than the court does, in which event they are the judges of the law and the fact, and are under no obligation to take it from the court whatever."

In *State* v. *Reed,* 52 Or. 377, 388 (97 Pac. 627, 631), this court said: "It was the duty of the court to instruct the jury as to the law, and the duty of the jury to apply the facts found by it to the law as given it by the court." In *State* v. *Walton,* 53 Or. 557, 565 ( 99 Pac. 431, 434), the following is stated by this court: "The verdict of a jury in a criminal case necessarily includes both law and fact, and it is therefore within its power to determine the law as well as the facts; but it has no legal right to do so. The jury are required to find the law and the facts, 'under the direction of the court, as to 'the law,' * * and should receive and accept the law as given by the court, and not assume to decide it for themselves." In a later case (*State* v. *Daley,* 54 Or. 514, 522: 103 Pac. 502, 505), after reviewing the constitutional provisions, this court said:

"The instructions given at the trial of a criminal action relating to the questions of law involved ought to bind the consciences of the jurors, prompting them to return a just verdict, though a defendant might be found guilty; and, while the jurors possess the power referred to, they have not the moral right to disregard the directions of the court as to the law. In the trial of a criminal case, the jury in determining the guilt or innocence of the party accused, which consists of a mixed question of law and fact, should always be governed by the court's direction as to the law, as expressly indicated by our constitution."

1. The instruction to the jury, concluding as follows: "In which event they are the judges of the law and the fact, and are under no obligation to take it from the

court whatever"—is not in harmony with the section of the constitution referred to, or with the former holdings of this court. In order to effectuate the clause in the constitution, "under the direction of the court as to the law," it is the plain duty of the jury to accept and apply the law as given them by the court. The power of the jury to disobey the directions of the court as to the law does not imply either a legal or moral right to do so.

Counsel for the State cite 1 Bashfield's Instructions to Juries, Sections 24-27, in support of this instruction. It will, however, be noticed that the instructions in that work are based upon the adjudications in states where the provisions of the constitution are not modified by the words "under the direction of the court as to the law."

2. It is the theory of the defense that Oi Sen committed the crime, or was a party to its commission. Counsel for defendant contends that the defendant was entitled to have the jury instructed as requested, to the effect that, if the jury found her to be an accomplice, a conviction could not be had on her testimony alone, unless they should find that the same was corroborated by independent evidence tending to connect the defendant with the commission of the crime. Error in this regard is assigned. Counsel for the State maintain that the evidence of Oi Sen was abundantly corroborated, and that the substance of the instructions given were as requested. The question as to whether Oi Sen was an accomplice was submitted to the jury. Upon the subject of corroboration the court instructed the jury, in substance, as follows:

"Section 1540 of Lord's Oregon Annotated Laws provides: 'A conviction cannot be had upon the uncorroborated evidence of an accomplice, or upon the evidence of an accomplice, unless the same be corroborated by other evidence, which tends to connect

the defendant with the commission of the crime. Nor is the corroboration sufficient if it merely shows the commission of the crime or the circumstance of its commission.' This is our statute, and it is positive law. * * There must be corroboration of the testimony of an accomplice upon important facts. Now, this does not mean that you have got to produce somebody who tells altogether the same sort of a story that the accomplice does, but there has got to be corroboration of the accomplice upon important facts, so that you can say to yourselves, 'Now, I have heard the testimony of the accomplice, and have found her corroborated upon important facts and as to important personages, may I rely upon her testimony having been thus corroborated as to other facts, as to other persons where there is no corroboration?' And, if you can say that you have sufficient corroboration on important facts in the case to warrant you in believing her, where she is uncorroborated, you are justified in doing so, if it brings conviction to your minds beyond a reasonable doubt. Now this rule of law is only to be applied if you find that this woman was an accomplice. * * Was Oi Sen an accomplice in the case? Now, assuming that the story which she tells here, simply for the purpose of illustration, and for the purpose of illustration only assuming that her story is true, was she in a conspiracy to kill Seid Wah Bing—did she enter into any of the preliminary arrangements or affairs necessary to bring about his death—did she abet, did she counsel, did she instigate, did she hire, or was she present, encouraging these people? If you answer affirmatively any of these questions—was she there with these people who committed the crime—then she was an accomplice, and you must find her corroborated upon important facts before you would be justified to believe her testimony beyond a reasonable doubt, in convicting upon it alone. * * And upon the subject of an accomplice in this case it does not have to be proven beyond a reasonable doubt. The preponderance of evidence which applies in civil cases applies in this case upon the subject of ascertaining whether or not she was an accomplice; that is, in determining whether or not she was an accomplice. If you have a doubt upon the subject as to whether or not she was an accomplice, you do not apply the rule. If you find by a preponderance of the evidence, that she was an accomplice, then you do apply the rule."

Counsel for defendant requested the following instructions:

"I instruct you that, if you find that Oi Sen was an accomplice in the commission of the crime charged against the defendant, then you cannot find the defendant guilty, unless you also find that her testimony is corroborated by other evidence which of itself tends to connect the defendant with the commission of the crime, and, if you do not find that there is such other evidence, then you must find the defendant not guilty, even though you believe the testimony of Oi Sen, and are by it alone satisfied beyond a reasonable doubt of the defendant's guilt, for the law does not allow a person to be convicted on the uncorroborated testimony of an accomplice and the corroboration must be of the character I have mentioned."

Defendant's counsel saved exceptions to the giving of the above instructions, and the refusing to give the requested charge, and assigns error.

After reading Section 1540, L. O. L., the trial court, in explaining the meaning and directing the application thereof, instructed the jury, in effect, that there must be corroboration of the testimony of an accomplice upon important facts, and if they found that the witness Oi Sen was sufficiently corroborated upon important facts and as to important personages to warrant them in believing her, where she was uncorroborated, they were justified in believing her as to other facts and other persons where there was no corroboration, if her testimony was convincing beyond a reasonable doubt. The defense maintains that in the trial of the case important facts were developed upon which the witness Oi Sen was corroborated, such as the shipping of the body of the victim, but which corroborating evidence did not tend to connect the defendant with the commission of the crime. The instructions taken as a whole permitted the jury, if they found the witness Oi Sen was an accomplice and was corroborated as to important facts in the case,

if they believed her testimony, to find the defendant guilty upon her evidence, although the corroborating evidence might merely have shown the commission of the crime, or the important circumstances connected therewith, but did not tend to connect the defendant with the commission of the crime, as the statute provides it should before a conviction can be had upon the testimony of an accomplice. The court several times reiterated the statement to the jury that the testimony of the accomplice must be corroborated upon "important facts" before they would be warranted in believing her testimony. Only in the reading of the statute was the requirement that "such other evidence must tend to connect the defendant with the commission of the crime" referred to in the instructions. We think that the effect of the reading of this provision in the statute was nullified by the other instructions. The jury was instructed, in effect, that, if they found the woman's testimony corroborated upon important facts and as to important personages, they were justified in believing her as to other facts, and as to other persons where there was no corroboration. "Other persons," as the words were used, might include the defendant, and we think the jury understood that they did refer to this defendant. Under these conditions, we think the instruction given should have been qualified, so as to have required the corroboration to be by evidence which of itself tended to connect the defendant with the commission of the crime, or else the requested instruction upon this point should have been given. The corroboration requisite to validate the testimony of an alleged accomplice should be to the identity of the person accused. If any corroboration in matters not connecting the accused with the offense were sufficient, the accomplice could by his mere oath transfer to another the conviction hanging over himself. 1 Wharton, Criminal Evid. (10 ed.), Section 442.

3. Counsel assigns as error that part of the charge referring to a doubt as to whether or not Oi Sen was an accomplice. The meaning probably intended to be conveyed was that, if the jury found that the witness was an accomplice, they must apply the rule given in regard to corroboration; but if they found that she was not an accomplice, or were unable to decide, they should not apply the rule. Mr. Wigmore, in his work on Evidence, volume 3, Section 2060, in regard to the application of such rule, says:

"If they [the jury] are in doubt, and unable to decide, the rule is not to be applied; but they need only believe by the preponderance of the evidence."

And cites *Ross* v. *State,* 74 Ala. 532, and *Childress* v. *State,* 86 Ala. 77, 86 (5 South. 775). The gist of these decisions is that under the statute of the State, before corroboration can become a condition of conviction, the jury must be reasonably satisfied that the witness was an accomplice. We do not think the author uses the phrase "if they are in doubt" in the sense that it must be proven beyond a doubt that the witness is an accomplice before the rule adverted to should be applied, and we do not so understand the instruction objected to. We think the error complained of in regard to the corroborating evidence required, taken with the instruction as to the right of the jury to determine the law, was prejudicial to the rights of defendant. The whole testimony in the case is not contained in the record, and therefore we cannot say that the judgment was such as should have been rendered, notwithstanding the error.

It follows that the judgment of the lower court must be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion; and it is so ordered.          REVERSED.