Argued at Pendleton October 26, affirmed November 23, 1920, re-hearing denied February 15, 1921.

# STATE *v.* TURNBOW.

(193 Pac. 485; 195 Pac. 569.)

**Criminal Law—Woman Requesting Man to Meet Her Held an Accomplice of Person Assaulting Him With Intent to Rob.**

1. A woman who requested a man to meet her at a certain secluded place, under an agreement with defendant that he should appear there alone and rob the victim, could be punished for the crime of assault with intent to rob, where defendant at such place assaulted the victim with such intent, and was an accomplice.

**Criminal Law—Testimony of Accomplice must be Corroborated by Evidence Connecting Defendant With Crime.**

2. Under Section 1540, L. O. L., no conviction can be had upon the testimony of an accomplice unless he is corroborated by such other evidence as independently tends to connect defendant with the commission of the crime.

**Criminal Law—"Accomplice" Defined.**

3. The term "accomplice" means a partaker in the commission of a crime, a person who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime; one of the tests of an accomplice being that, if the partaker can be indicted and punished for the crime for which the accused is being tried, he is an accomplice; otherwise not.

Criminal Law—Testimony of Accomplice as to Assault With Intent
to Rob Held Sufficiently Corroborated.

4. In a prosecution for assault with intent to rob, evidence of
an accomplice *held* sufficiently corroborated by other evidence tend-
ing to connect defendant with the crime.

Criminal Law—Instruction as to Accomplice Testimony Held not
Erroneous as Assuming Facts.

5. An instruction concerning an accomplice, "But, if the evi-
dence in the case outside of the testimony of K. * * tends to con-
nect the defendant with the commission of the crime set forth in
the indictment, then this is a sufficient corroboration of the testi-
mony of K.," *held* not erroneous as invading the province of the
jury, assuming disputed facts.

Criminal Law—No Complaint can be Made of Erroneous Instruction
Brought Out by Request of Complaining Party.

6. Accused cannot on appeal complain of a conditional assump-
tion of guilt in an instruction given after modification by the court,
where such conditional assumption of guilt was brought out by de-
fendant's request.

PETITION FOR REHEARING.

Criminal Law—To Corroborate Accomplice no Circumstance, Stand-
ing Alone, Need Tend to Connect Defendant With Crime.

7. For the corroboration of an accomplice, required by Section
1540, Or. L., for conviction, it is enough that all the corroborating
circumstances combined tend to connect defendant with the crime,
though none of them, standing alone and in itself, does so.

Criminal Law—Instruction not Prejudicial When, Considering
Charge as Whole, the Jury Should not have Been Misled.

8. Though an instruction should have been more specific and was
not technically correct, yet it cannot be said as matter of law to
have been prejudicial, where the jury should not have been misled
thereby when construed with the other instructions and considered
with the whole charge.

Judges—Objection to Disqualification of Judge Should be Made at
Time of Argument.

9. Objection to a judge of the Supreme Court as disqualified to
sit in a case should be made at argument of case, and not for first
time in petition for rehearing.

Judges—Not Disqualified to Sit in Supreme Court Because Attorney
General at Time of Trial Below.

10. A judge is not disqualified to sit at hearing of criminal case
in Supreme Court because he was Attorney General at time of trial
below, and when appeal was taken, he not having participated in
such trial, nor undertaken to appear in the case on appeal, and,
under Section 2773 et seq., Or. L., an Attorney General having
nothing to do with such a trial unless directed by the Governor,
and his appearing in such a case in the Supreme Court, in the
absence of a special request, being a matter in his sole discretion.

10. Participation as or relationship to counsel as disqualifying
judge, see note in Ann. Cas. 1917A, 1061.

From Union: JOHN W. KNOWLES, Judge:

In Banc.

The defendant, Frank Turnbow, and Kathryn Moss were jointly indicted by the grand jury of the State of Oregon in and for Union County, charged with the crime of assault with intent to rob one John L. Neeley. Thereafter Turnbow and Moss were placed on trial, but soon after the commencement thereof Kathryn Moss, codefendant of Frank Turnbow, was dismissed upon the motion of the prosecution, to become a witness on behalf of the state. Both the prosecuting witness, John L. Neeley, and the accomplice, Moss, gave testimony. A number of other witnesses were offered on the part of the state, who testified to circumstances of more or less weight. The appellant assigns as error:

(1.) That the court below erred in denying, over defendant's exception, the motion for an order directing a verdict of acquittal, made at the close of the evidence of the state.

(2.) That the court erred in refusing, over defendant's exception, at the close of the testimony, to instruct the jury to return a verdict of not guilty.

(3.) That the court erred, over defendant's exception, in refusing defendant's request No. 11, and in modifying the same and giving the same as modified, as instruction No. 14, for the reason that the same is an invasion of the province of the jury, assumes disputed facts, and instructs upon the weight of the testimony.

(4.) That the court erred, over defendant's exception, in refusing defendant's request No. 13, and in modifying the same and giving the same as modified, as instruction No. 16, for the reason that the same

is an invasion of the province of the jury, assumes
disputed facts, and instructs upon the weight of the
testimony.

(5.) That the court erred, over defendant's excep-
tion, in refusing defendant's request No. 12, and in
modifying the same and giving the same as modified,
as instruction No. 15, for the reason that the same
is an invasion of the province of the jury, assumes
disputed facts, and instructs upon the weight of the
testimony.                               AFFIRMED.

For appellant there was a brief over the name of
*Messrs. Cochran & Eberhard,* with oral arguments
by *Mr. George T. Cochran* and *Mr. Colon R. Eber-
hard.*

For the State there was a brief and an oral argu-
ment by *Mr. John S. Hodgin,* District Attorney.

BROWN, J.—The only serious question presented
by the record is the matter of the sufficiency of the
evidence to meet the provision of the Code (Section
1540, Oregon Laws), providing that:

"A conviction cannot be had upon the testimony of
an accomplice, unless he be corroborated by such
other evidence as tends to connect the defendant with
the commission of the crime, and the corroboration
is not sufficient if it merely show the commission of
the crime, or the circumstances of the commission."

The foregoing is a rule of evidence made impera-
tive by statute, and has been applied in many cases,
among which are *State* v. *Odell,* 8 Or. 32; *State* v.
*Roberts,* 15 Or. 187 (13 Pac. 896); *State* v. *Light,* 17
Or. 360 (21 Pac. 132); *State* v. *Jarvis,* 18 Or. 365
(23 Pac. 251); *State* v. *Townsend,* 19 Or. 215 (23 Pac.
968); *State* v. *Scott,* 28 Or. 335 (42 Pac. 1); *State*

v. *Carr*, 28 Or. 396 (42 Pac. 215); *State* v. *Kelliher*, 49 Or. 77 (88 Pac. 867); *State* v. *Wong Si Sam*, 63 Or. 266 (127 Pac. 683, 686).

A conviction of Frank Turnbow was had upon the testimony of John L. Neeley, the person alleged to have been robbed, Kathryn Moss, a self-confessed partaker in the crime of assault with intent to rob, together with the testimony given by a number of witnesses who testified to circumstances of some value as evidence in the trial of the cause.

From the testimony of the prosecuting witness, John L. Neeley, it appears that he was a rancher who had been residing for a number of years at Durkee, Baker County, Oregon; that shortly before the crime he had sold and delivered at Baker a bunch of cattle and had received therefor a large sum of money. From Baker he came to La Grande and entered into negotiations for the purchase of a pool-hall. He renewed a former acquaintance with Frank Turnbow, the defendant, as well as with Kathryn Moss, the accomplice. During a period of two weeks preceding the alleged assault with intent to rob, Neeley and Turnbow met nearly every day and night at a pool-hall in La Grande. Neeley further testified that Turnbow, learning that he (Neeley) was about to purchase a pool-hall, came to him and wanted to get in on the deal, stating to him that he had no money, but would let his wages go on the purchase price. Neeley swore he informed Turnbow that he had money enough on his person to purchase the pool-hall and pay for the same once or twice, and opened an envelope, disclosing a sum of money in twenty-dollar bills; that within an hour after the display of money to Turnbow the latter invited the former to play a game of poker, which he (Neeley) refused; that on the second night

thereafter Turnbow again urged the witness Neeley to play poker, and when the latter appeared reluctant Turnbow insisted that he had a quiet room, a bottle, with a nice bunch of fellows. Neeley further testified that he met Kathryn Moss in the autumn of the preceding year; that he had seen her from time to time during his visit at La Grande, upon the occasion of the attempt to rob him; that on the morning preceding the assault upon him Kathryn Moss requested him to sit down where she was eating breakfast. He testified that—

"There were several commonplace remarks made, * * and she spoke up and said this was the hardest town for a girl to make a living in she ever saw. * * She said the police were such s—s o— b—s a girl could not make a living in town."

He testified that he invited her to his room, but she declined, stating that they were watching her too close, but requested him to meet her that night at a point in the vicinity of the High School Building. An appointment was made between them to meet at 10:30 o'clock that night at the High School Building. Neeley testified that he left the pool-hall at 10:15 o'clock in the evening, walked to the Foley Hotel, got a taxicab, and told the taxi driver that he was afraid there was some trap to it, also told him whom he was going to meet. When Neeley was taken to the vicinity of the High School Building, he said he alighted from the taxicab and proceeded on foot to fulfill his appointment. However, instead of meeting the Moss woman in the darkness as he expected, he met a man with a club, who struck him. Neeley testified that he was unable to identify the person who assaulted him. He stated that—

"I could see him just about the instant he struck me, you know—

"Q. Did you see the club?

"A. Yes; I saw it when he struck me with it. * *

"Q. Well, tell the jury what you did then.

"A. Why, I sat there a moment or so, I guess, and I could see him plain, and jumped up and jumped out of the door. There was no one around the building or schoolhouse, but out in front ef the schoolhouse there was, I guess, a hundred people passing there. The whole block was pretty well covered with them. * *

"Q. That was about the time the theater turned out?

"A. Yes; they had just turned out and were going home."

Neeley failed to identify his assailant, but stated that he is a man about his own height, and in testifying about the blow stated that "he hit me so hard the club fell out of his hands and went to the other side of the alleyway," and that as soon as he jumped up he ran out of the door and outside; that he was bleeding; that he found a taxicab man and went to a doctor and to the sheriff's office.

Kathryn Moss testified that she was acquainted with Turnbow, the defendant, and that he had said to her that "Neeley had a large sum of money on his person, and flashed it around, and he would like to get hold of it. * * " The Moss woman further testified that Turnbow "suggested that I make a date with him [Neeley] and then go to some secluded spot, and he [Turnbow] meet the two of us, and I objected to it that way." She further testified that she told Turnbow, "If Neeley ever butted into me I would make a date with him, and he suggested that he meet him alone and me not go, and I said 'All right.' " This last conversation was a day or so before the assault. She further testified that on the morning preceding

the night of the assault, while sitting at a table in a restaurant, she made an appointment with Neeley to meet him at the hour of 10:30 o'clock that night at the High School Building; that she informed Turnbow of the date she had made with Neeley; and that she and Turnbow discussed the division of what money might be obtained from Neeley, on a 50–50 basis. She testified that Turnbow was to see her again at 11 o'clock, after his meeting with Neeley; that Turnbow did meet her at the appointed time, as per his agreement, armed with a revolver, and informed her that Neeley had gotten away; that Turnbow gave her the pistol with which he was armed, with instructions to "ditch it," and offered her cartridges, which she refused to take; that she took the pistol, tucked it away in her stocking, and returned to the house, where two young men were visiting; that they observed something unusual and asked her what was in her stocking. She testified that she went to the stairway and removed the pistol, and later "put it outside of the window under the window-sill on the roof of the porch," where the officers found it next day. She further testified that after her arrest and incarceration in the city jail Frank Turnbow came to the back of the jail, talked with her through the jail window, and importuned her not to turn state's evidence and become a witness against him, stating that he did not intend to "kill the old bird," and informing her that he could prove an alibi and get both of them out of the difficulty.

Jesse Stiles and witness Taal gave evidence which corroborated the testimony of Kathryn Moss relating to Turnbow's coming to the jail. Stiles testified that he was a fireman for the city during the incarceration of Kathryn Moss in the city jail, and that he saw Turnbow go to the back side of the jail and

stand at the window; that he then informed the witness Taal, who testified that he could not hear Turnbow's words through the glass window at the distance he was, but that Turnbow's lips were moving.

Jim Garrity, with whom Turnbow worked at the blacksmith business as a blacksmith's helper, stated that on the afternoon preceding the night of the assault Turnbow borrowed a 32-caliber Smith & Wesson revolver from him, the property of one Claude Scranton, and asked him if he had any cartridges for the pistol; that he told him he had, and arrangements were made to leave the cartridges at Hughes' pool-hall that night at 7 o'clock, which was done. From the evidence, this is the pistol that was found by Lee Warnick, the sheriff, when searching the house where Kathryn Moss roomed, and is the gun that Kathryn Moss claims she received from Turnbow at 11 o'clock on the night of the assault.

Witness Tom Driskell stated that he saw Kathryn Moss and Turnbow together between 7:30 and 8 o'clock on the evening of the assault.

William Strong testified that he was at the Ferris home from about 7:30 to 11:30 on the night of the assault; that he remembered that Kathryn Moss left the room and went out about 11 o'clock, was gone about five minutes, and that when she returned he noticed something bulging out in her clothes below the knee; that he commented on it, and she got up and went out into the hall.

Mrs. Peck, defendant's mother-in-law, testified that the defendant came to her home the next night after the assault on Neeley and the same night of his (defendant's) arrest; that she heard her daughter, defendant's wife, ask him why he did not come to the hospital where she then was, and he said he "couldn't

come," he "had other things to attend to," and that she would "find out later."

1, 2. The testimony in this case plainly discloses that Kathryn Moss was implicated in the crime concerning which she testified; that she could have been indicted and punished for the crime of assault with intent to rob Neeley, and was therefore an accomplice; hence a conviction of the appellant, Frank Turnbow, could not be had upon her testimony, unless she was corroborated by such other evidence as tended to connect him with the commission of the crime of assaulting John L. Neeley with intent to rob him. The rule of evidence requiring the corroboration of accomplices who have committed crimes involving gross moral turpitude, in cases like the one at bar, is necessary for the protection of liberty. Evidence obtained from the testimony of such guileful individuals as Kathryn Moss admitted herself to be when she testified that she lured the prosecuting witness to a secluded spot in order that he might be made the victim of a robbery must be looked upon as coming from a polluted source. However, the administration of justice requires that the courts receive such testimony as a matter of necessity and policy, else the perpetrators of many of the gravest crimes would go unwhipped of justice. Innocence is shielded by the rule of evidence requiring corroboration of the testimony of the accomplice by such other independent evidence as tends to connect the defendant with the commission of the crime charged. It has been well said that:

"The corroboratory evidence, in order to be sufficient, must tend to connect the accused with the commission of the crime, and *this tendency* must be independent of the testimony of the accomplice. It is not sufficient if it merely proved the *corpus delicti*

and the circumstances thereof'': 1 Ency. L. &. P. 580, 581.

3. As used in the criminal law, the term ''accomplice'' means a partaker in the commission of a crime. Wharton's definition of ''accomplice,'' as given in his work on Criminal Evidence, Section 440, has been adopted by this court in *State* v. *Roberts,* 15 Or. 187 (13 Pac. 896), and is as follows:

''An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime.''

As a general rule, it may be stated that:

''One of the tests of an accomplice is that if the partaker can be indicted and punished for the crime for which the accused is being tried he is an accomplice; otherwise he is not'': 1 Ency. L. & P. 550.

In the case of *State* v. *Odell,* 8 Or. 32, the defendant, Odell, was indicted for the crime of larceny in a store. It was sought to convict him upon the testimony of an accomplice alone, supported by the evidence of a witness to the effect that Odell was in the town where the crime was committed on or about the time of the commission of the offense. This court reversed the conviction on the grounds of insufficiency of the corroborative evidence.

In the case of *State* v. *Roberts,* 15 Or. 187 (13 Pac. 896), the defendant was indicted and convicted of the crime of arson. The term ''accomplice'' was defined by the court, and it was held that one of the chief witnesses on the part of the state was not an accomplice. The conviction was affirmed.

In the case of *State* v. *Light,* 17 Or. 360 (21 Pac. 132), the defendant was indicted for playing a certain unlawful game known as stud-poker, a game played with cards for money and checks as representatives

of money and value. The judgment of conviction was reversed. The record discloses that the dealer of the game at the time the defendant Light was charged to have played poker was the only witness introduced or examined on the part of the state. It was held that the dealer was an accomplice of the player, and a conviction could not be had upon his uncorroborated testimony.

*State* v. *Jarvis,* 18 Or. 365 (23 Pac. 251), was a case wherein the defendant was indicted for the crime of incest. The conviction was set aside, the opinion of the court being rendered by Mr. Justice STRAHAN, who held that Josephine Ross was an accomplice of the defendant Jarvis, and that a conviction could not be had upon her testimony, unsupported by any other evidence tending to connect Jarvis with the commission of the crime. The only testimony that was offered to corroborate the accomplice was in the nature of impeaching testimony, and was not, in any sense, corroborative evidence.

In *State* v. *Townsend,* 19 Or. 215 (23 Pac. 968), the defendant was jointly indicted with others, and convicted of the crime of larceny of a cow. The owner of the cow testified to the theft of his animal. One Jed Beal, codefendant, testified as an accomplice to the particulars of the larceny of the cow by himself and the defendant. The corroborative testimony was to this effect:

Charles Stencil testified that about January 14, 1889, "I was at Frank Beal's place about four miles from town. At one time that night, I think about 8 P. M., Jed Beal was there, and he left, and a little later he came back to the house with the defendant Townsend. Townsend was then introduced to me by Jed Beal as 'Jack Morton.' In a short time they left again. I know the pasture where the cow was. I

heard next day the cow was missing. There was no one else at the house when the defendant came.''

The conviction of Townsend was affirmed, and the court, speaking through Mr. Justice LORD, said that the foregoing testimony was sufficient "to tend in some degree to connect the defendant with the commission of the crime.''

The case of *State* v. *Scott,* 28 Or. 335 (42 Pac. 1), was an indictment and conviction of the crime of adultery. The opinion of this court was written by Mr. Justice MOORE, who held that the testimony of the woman with whom the defendant was charged with having committed adultery was not sufficiently corroborated to sustain a conviction. The corroborating evidence merely tended to show that there was an opportunity to commit the act, but did not show an adulterous mind in either party, or any circumstances from which adultery might be inferred.

In the case of *State* y. *Carr,* 28 Or. 396 (42 Pac. 215), the defendant was convicted of the crime of offering to bribe one Thomas Huntington, a juror, in a criminal action against Joseph Kelly. This court held, in an opinion by Mr. Chief Justice ROBERT S. BEAN, that whether a witness is or is not an accomplice is a question for the court where the facts in relation thereto are all admitted and no issue thereon is raised by the evidence; but, if the evidence is conflicting as to whether the witness is or is not an accomplice, that issue should be submitted to the jury under the proper instruction; also that a mature person of ordinary intelligence who knowingly offers, as a bribe to a juror, money provided for that purpose, becomes an accomplice within the meaning of said Section 1540, Oregon Laws. The court set the conviction aside because it was had upon the testimony of defendant's

accomplice, Mrs. Huntington, through whom Carr had offered the bribe to the juror, without the required corroboration, the court saying:

"And it seems to us there can be no escape from the conclusion that on this record Mrs. Huntington was an accomplice of the defendant. Under all the authorities one who, being of mature years and in possession of his ordinary faculties, knowingly and voluntarily co-operates with or aids and assists another in the commission of a crime is an accomplice, without regard to the degree of his guilt: 1 Russell on Crimes, 49; Wharton on Criminal Evidence, § 440; Rice on Criminal Evidence, § 319; Bishop on Criminal Procedure, § 1159; *Cross* v. *People,* 47 Ill. 152 (95 Am. Dec. 474). The term is generally used in discussions involving the admissibility or weight to be given to the testimony of one *particeps criminis* against his fellow. In such case the grade of guilt is ordinarily unimportant, and therefore 'an accomplice' is an appropriate term because it implies nothing as to grade. It is so used in the statute."

In the case of *State* v. *Kelliher,* the defendant was accused by an information jointly with one H. H. Turner of the crime of forgery of a certain instrument in writing, namely, a deed. This Court held, in an opinion by Mr. Justice EAKIN, that the evidence was insufficient to convict Kelliher, and reversed the case, the opinion stating that:

"Turner, the accomplice, not being corroborated by other evidence tending to connect the appellant with the commission of the crime, or the circumstances of its commission, the evidence was insufficient to sustain the verdict, and the case is reversed and remanded to the court below for such further proceeding as may seem proper, not inconsistent with this opinion."

The case of *State* v. *Wong Si Sam,* 63 Or. 266 (127 Pac. 683, 686), jointly indicted for the crime of murder, was reversed by this court in an opinion by

Mr. Justice BEAN, where the court held, among other things, that "the corroboration requisite to validate the testimony of an alleged accomplice should be to the identity of the person accused."

In the cause made by the state against Turnbow there was much more testimony given by witnesses other than the accomplice than in any of the foregoing cases, unless it be the Townsend case. In the case at bar there was testimony sufficient, if the jury believed it, to establish the assault made upon Neeley, independent of the testimony of Kathryn Moss. The victim himself testified to the. assault and the circumstances thereof. He also gave testimony tending to show that appellant had been scheming to part him (Neeley) from his money by means of an unlawful card game, and that on two occasions he had tried to inveigle him into a poker game.

Tom Driskell testified that he saw the appellant and his accomplice together the evening of the assault, between 7:30 and 8 o'clock, on the streets of La Grande.

The witness Garrity proved that the appellant prepared himself with a pistol on the night of the assault; that he borrowed from Garrity a 32–20 Smith & Wesson revolver, together with cartridges that were delivered at a pool-hall for the appellant.

The accomplice, Moss, testified that Turnbow was to meet her at 11 o'clock at night after his meeting with Neeley, and that, pursuant to the appointment, she went to the spot designated as the meeting place; that Turnbow was there and told her that Neeley had gotten away; that he delivered the revolver to her with instructions to "ditch it," and offered her cartridges, which she refused to take; that she took the pistol, and later "put it outside of the window under the window-sill on the roof of the porch," where the officers

found it the next day. She was corroborated in her testimony relating to the meeting of the defendant and receiving the pistol by witness Strong, who testified that he saw her leave the room at about 11 o'clock that night and return about five minutes later, and that something was bulging from her stocking. She was also corroborated by Garrity, in this: The witness Garrity testified that about the hour of 11 o'clock that night Turnbow returned to him the cartridges that he had let him have earlier in the evening, but not the revolver. Defendant's mother-in-law testified that on the night following the assault the defendant's wife, in her presence, asked him where he was the night before and why he did not come to where she was at the hospital ill, and he replied that he had ''other things to attend to'' and that she would ''find out later on.'' Another circumstance of importance, when taken in connection with the other evidence, is defendant's hanging around the city jail, evidently for the purpose of conversing with the accomplice, who decoyed Neeley to the place of the assault.

4. Taking together all the circumstances testified to by the various witnesses, the jury had a right to find that the testimony of the accomplice was corroborated by such other evidence as tended to connect Turnbow with the commission of the crime of assault with intent to rob Neeley. Therefore, the court is not at liberty to disturb the verdict in this case.

5. The defendant's requested instruction No. 11 was modified by the court by adding certain matter thereto, and was given as instruction No. 14. The appellant asserts that the modification was error, and assigns as his reason that the instruction, as given by the court, constitutes an invasion of the province of the jury, assumes disputed facts, and instructs upon

the weight of the testimony. A careful reading of the instruction will dispose of the objection. Defendant's requested instruction reads as follows:

"I further instruct you that, if you find from the evidence in this case that the defendant was seen talking with the witness Kathryn Moss while she was confined in the city jail, that such evidence, if any, is not alone such a corroboration of the testimony of an accomplice as the law contemplates, and cannot alone be the basis of corroboration upon which you can find the defendant guilty."

The matter added to the above requested instruction by the court is the following:

"But if the evidence in the case, outside of the testimony of Kathryn Moss, including the fact that the defendant was seen talking to Kathryn Moss while confined in the city jail, if you find that the defendant was seen talking to Kathryn Moss while she was confined in the city jail, tends to connect the defendant with the commission of the crime set forth in the indictment, then this is a sufficient corroboration of the testimony of Kathryn Moss, and if from the testimony of Kathryn Moss and such corroborative evidence, if any, you are satisfied of the guilt of the defendant, as charged in the indictment, beyond a reasonable doubt, you should find defendant guilty."

The court assumes no disputed fact, nor in any wise invades the province of the jury.

In the case of *State* v. *Bunyard,* 73 Or. 222 (144 Pac. 449), this court held it to be the exclusive province of the jury to determine whether or not evidence offered for the purpose corroborated the testimony of an accomplice, and that an error had been committed by the court in stating to the jury that corroborative evidence had been received.

In the case at bar, the court followed the language of the statute and instructed:

"But if the evidence in the case, outside of the testimony of Kathryn Moss, * * tends to connect the defendant with the commission of the crime set forth in the indictment, *then* this is a sufficient corroboration of the testimony of Kathryn Moss."

Under the instruction as given, it became the exclusive duty of the jury to find whether the various circumstances related by the witnesses in their testimony tended to connect the defendant with the commission of the crime, or otherwise.

Assignments of error 4 and 5 are in the same class, and are disposed of by the same process of reasoning.

6. We may add that the conditional assumption of guilt in appellant's request No. 12, given after modification by the court as instruction No. 15, is brought out by appellant's request, and does not constitute error: *Humerlynck* v. *Banfield,* 36 Or. 436 (59 Pac. 712).                                    AFFIRMED.

McBRIDE, C. J., and BENSON, J., absent.

---

Rehearing denied February 15, 1921.

PETITION FOR REHEARING.

(195 Pac. 569.)

On petition for rehearing.

In Banc.

This case was affirmed November 23, 1920, in an opinion written by Mr. Justice BROWN, and reported *ante,* p. 270, (193 Pac. 485). Attorneys for the appellant vigorously contend: First, that the testimony of the accomplice, Kathryn Moss, was not sufficiently corroborated to sustain a conviction; second, that instructions Nos. 14, 15 and 16 were erroneous; and, third,

that Mr. Justice BROWN was not qualified to sit by reason of the fact that he was Attorney General of the state at the time the appeal was perfected.

AFFIRMED.   REHEARING DENIED.

*Messrs. Cochran & Eberhard,* for the petition.

*Mr. John S. Hodgin,* District Attorney, *contra.*

JOHNS, J.—7. The state's case is founded wholly upon circumstantial evidence and a detail of the facts which surrounded and led to the commission of the crime, together with what was said and done by the accomplice and the defendant immediately after its commission. Appellant's counsel segregate each particular fact and circumstance from the others and adroitly point out that such particular fact or circumstance does not tend to corroborate the testimony of Kathryn Moss. It may be true that for such purpose no one of them, standing alone, would be sufficient to comply with the statute.

Section 1540, Or. L., enacts:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

This does not mean that each particular fact or circumstance, standing alone and within itself, must be corroborating evidence which would "tend to connect the defendant with the commission of the crime," but that from all of them combined there must be sufficient corroborating evidence for that purpose.

By instruction No. 9 the jury was told:

"If you entertain any reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of the doubt and return a verdict of not guilty."

Instruction No. 12 is as follows:

"It is the law that the defendant cannot be convicted in this case upon the testimony of an accomplice, even though you believe her testimony to be true. * * Under the law, the corroborating evidence, to be sufficient, must be as to some material matter, and must tend to connect the accused with the commission of the crime. * * If you find that there is such other testimony, upon a material matter, tending to connect the defendant with the commission of the crime, and does not merely show the commission of the crime, or the circumstances of the commission, then it will still be your duty to find the defendant not guilty, unless you further believe, from all the evidence in the case, beyond a reasonable doubt, that the defendant is guilty as charged."

The testimony of the surrounding facts and circumstances was admissible, after which it then became a question of fact as to whether it did "tend to connect the defendant with the commission of the crime." The jury found the defendant guilty, and there is evidence to support the verdict.

8. Complaint is made, in particular, to the giving of defendant's instruction No. 15 as modified by the court. It should have been more specific, and as given, it was not technically correct; but, when construed with the other instructions and considered with the entire charge, the jury should not have been misled, and we cannot say, as a matter of law, that it was prejudicial.

By other and different instructions, the jury was told that, to be sufficient, the corroborating evidence

99 Or.—19

"must be as to some material matter, and must tend to connect the accused with the commission of the crime."

9, 10. The abstract and brief of appellant were filed October 2, 1920, and at that time Mr. Justice BROWN was Attorney General. He assumed his duties as a member of this court on October 14, 1920, and it is true that he sat at the hearing *en banc* in Pendleton and wrote the opinion in this case. It is also true that no objections of any kind were ever made until the petition for rehearing was filed. Although he wrote the opinion, yet when it was handed down it was not the opinion of Mr. Justice BROWN alone. It became the unanimous decision of this court. To become effective, such objections, if any, should have been made at the time of the argument. Be that as it may, there is nothing in the record which would disqualify Mr. Justice BROWN. There is a marked difference between the official duties of the Attorney General of the United States and those of the Attorney General of the State of Oregon. The authorities cited by appellant's counsel are all cases construing the powers and duties of the United States Attorney General. Under the federal statute, he has the direct control and supervision of all prosecutions by the government. Likewise, it is his duty to instruct the United States district attorneys, and it is their duty to follow his instructions, in criminal proceedings by the government. Under our statute, unless directed by the Governor, the Attorney General has nothing whatever to do with the trial of a criminal case in the lower court. Section 2773, Or. L., defining the duties of Attorney General, among other things, provides:

"He shall appear, commence, prosecute or defend for the state, all causes or proceedings in the Supreme

Court, in which the state is a party or interested, when in his discretion the same may be necessary or advisable, and he shall, when requested by any state officer, board or commission, appear, commence, prosecute or defend any action, suit, matter, cause or proceeding in any court in which the state is a party or has an interest.''

The Attorney General had nothing to do with the trial of the case in the court below; and, in the absence of a special request, the question as to whether he shall appear in this class of cases in this court is a matter in the sole discretion of that officer, and there is no claim or pretense that he ever undertook to, or did, exercise that right. Moreover, the remaining members of this court are satisfied that the defendant had a fair trial, that there is no prejudicial error in the record, and that the judgment should be affirmed. The petition is denied.

AFFIRMED.    REHEARING DENIED.